GRIFFIS, P.J.,
for the Court:
¶ 1. Daryl Conner was convicted of burglary of a dwelling and felony fleeing. He was sentenced as a habitual offender, under Mississippi Code Annotated section 99-19-83 (Rev.2007), to serve life imprisonment. In this appeal, Conner argues that (1) there was insufficient evidence to convict him of the crime of felony fleeing; (2) the circuit court erred when it sentenced him as a habitual offender; (3) the circuit court failed to instruct the jury on the elements of the underlying crime of larceny; and (4) the circuit court erred in the denial of his motion for a new trial. We find no merit to these issues and affirm.
FACTS
¶ 2. On August 18, 2007, Mary Campbell discovered a man in her home. She told him to leave, and he left. Campbell called 911. Campbell testified that the man entered through the garage and the unlocked back door. She that testified she saw him leave through that door. Campbell testified he drove a small dark car.
¶ 3. Officer Matthew Kinne, of the Olive Branch Police Department, received a call about a burglary in progress. He was told to look out for a black male in a dark-colored shirt who drove a dark sedan. Shortly thereafter, Officer Kinne attempted to stop a vehicle that matched the description. A chase ensued. At trial, a video of the chase recorded by Officer Kinne’s dashboard camera was admitted into evidence and played to the jury.
¶ 4. When the car chase ended, by the vehicle crashing, the driver got out of the vehicle and began to run. Officer Kinne and other officers pursued the man on foot. They saw him go into a house, an occupant ran out of the house and informed the officers a man was in her house, they entered the house, and they found a man hiding in a closet. The man was taken into custody. Officer Kinne testified that the person they pursued on foot was the same person taken into custody-
¶ 5. Later, Campbell met with a detective and was presented with a photo lineup. She identified Conner as the man who had been in her house. Conner was also the man taken into custody after the car chase. Campbell also identified Conner at the trial.
¶ 6. Prior to trial, the State sought to amend the indictment to charge Conner as a habitual offender. The circuit court held a hearing and admitted Conner’s prior convictions through a pen pack, which included a sworn affidavit from the director of sentence-management services for the Tennessee Department of Corrections. The circuit court then allowed the State to amend the indictment to charge Conner as a habitual offender.
¶ 7. The jury convicted Conner of burglary of a dwelling and felony fleeing. The circuit court sentenced Conner to life without parole on each count. On April 15, 2011, Conner filed motions for a judgment notwithstanding the verdict and a new trial. On June 28, 2011, the circuit court denied both motions.
ANALYSIS

1. The circuit court did not err when it determined the State had produced sufficient evidence to support Conner’s conviction for felony fleeing.

¶ 8. When faced with a sufficien-ey-of-the-evidenee claim, the main question *162 “is whether the evidence shows ‘beyond a reasonable doubt that [the]accused committed the act charged, and that he did so under such circumstances that every element of the offense existed; and where the evidence fails to meet this test it is insufficient to support a conviction.’” Bush v. State, 895 So.2d 836, 843 (¶ 16) (Miss.2005) (quoting Carr. v. State, 208 So.2d 886, 889 (Miss.1968)). The court must ask “whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.” Id. (quoting Jackson v. Virginia, 443 U.S. 307, 315, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)). This Court will consider whether the “facts and inferences ... ‘point in favor of the defendant on any element of the offense with sufficient force that reasonable [jurors] could not have found beyond a reasonable doubt that the defendant was guilty[.]” Id. (quoting Edwards v. State, 469 So.2d 68, 70 (Miss.1985)). In such situations, this Court should reverse and render. Id.
¶ 9. But, if the evidence “is of such quality and weight that ‘having in mind the beyond a reasonable doubt burden of proof standard, reasonable fair-minded [jurors] in the exercise of impartial judgment might reach different conclusions on every element of the offense,’ the evidence will be deemed to have been sufficient.” Id. (quoting Edwards, 469 So.2d at 70). The evidence should be considered in the light most favorable to the State. Id. at (¶ 17).
¶ 10. The crime of felony fleeing is set forth in Mississippi Code Annotated 97-9-72 (Rev.2006), which states:
(1) The driver of a motor vehicle who is given a visible or audible signal by a law enforcement officer by hand, voice, emergency light or siren directing the driver to bring his motor vehicle to a stop when such signal is given by a law enforcement officer acting in the lawful performance of duty who has a reasonable suspicion to believe that the driver in question has committed a crime, and who willfully fails to obey such direction shall be guilty of a misdemeanor, and upon conviction shall be punished by a fine not to exceed One Thousand Dollars ($1, 000.00) or imprisoned in the county jail for a term not to exceed six (6) months, or both.
(2) Any person who is guilty of violating subsection (1) of this section by operating a motor vehicle in such a manner as to indicate a reckless or willful disregard for the safety of persons or property, or who so operates a motor vehicle in a manner manifesting extreme indifference to the value of human life, shall be guilty of a felony, and upon conviction thereof, shall be punished by a fine not to exceed Five Thousand Dollars ($5,000.00), or by commitment to the custody of the Mississippi Department of Corrections for not more than five (5) years, or both.
¶ 11. Conner argues the evidence was insufficient because no witness identified him as the person who exited the vehicle and was arrested. Thus, he argues, there was not sufficient evidence to find him guilty of the crime.
¶ 12. Campbell discovered a man in her house. At trial, she identified Conner as that man. As he left, Campbell got a description of his car and called law enforcement. Officer Kinne testified that he responded to a call about a burglary in progress, which was Campbell’s call. He was already in the area in response to a panic alarm. Officer Kinne saw a vehicle that matched the description dispatch gave him. He attempted to stop the vehicle and turned his blue lights on. Instead of stopping, the vehicle led Office Kinne on a car chase. The vehicle traveled at a high rate *163 of speed, ran a red light, and swerved in and out of several lanes of traffic. At the end of the chase, the driver got out of the vehicle and began to run. Officer Kinne and other officers pursued the man. They saw him enter a house. An occupant of the house ran out and told the officers that a man was in her house. The officers searched the house and found the man, whom they arrested.
¶ 13. The State argues[1] that Officer Kinne “testified that the man that exited the car was the defendant!.]” This is not a accurate statement of Officer Kinne’s testimony. He testified:
Q. Is that—that person that was taken into custody, is that the same person that you jumped out of your car to pursue on foot?
A. Yes.
Conner is correct that, during his testimony, Officer Kinne did not identify Conner as the person who was guilty of felony fleeing.
¶14. The video from Officer Kinne’s dash camera was played for the jury. It shows a chase that lasted just over seven and a half minutes. The video is evidence of the crime of felony fleeing. However, the video does not clearly identify Conner as the person who fled Officer Kinne’s arrest. For less than three seconds, the video shows a person get out of the car and begin to run, but there is not a clear picture to identify the person who got out of the car.
¶ 15. Campbell identified Conner as the person who was in her home. Campbell also identified Conner in a photo lineup after he was apprehended in the car chase. The short passage of time from Campbell’s report of a man in her home and the short distance from her home to the point where Officer Kinne spotted the similar vehicle and began the chase were sufficient evidence for the jury to infer that Conner was the individual who was driving the car and fled the arrest and whom Officer Kinne caught and arrested at the end of the chase. Officer Kinne testified that there was only one person in the fleeing automobile, the driver.
¶ 16. In Passons v. State, 239 Miss. 629, 634, 124 So.2d 847, 848 (1960), the supreme court held:
The character and adequacy of evidence of identification of an accused in a criminal case is primarily a question for the jury, provided the evidence could reasonably be held sufficient to comply with the requirement of proof beyond a reasonable doubt.... In short, positive identification by one witness of the defendant as the perpetrator of the crime may be sufficient, as in the instant case.
Here, there was sufficient evidence of a positive identification of Conner for the conviction of felony fleeing to stand. As a result, we find no error and affirm the conviction of felony fleeing.

2. The circuit court did not err when it sentenced Conner as a habitual offender.

¶ 17. Conner’s counsel objected at the sentencing hearing and argued that the State had not proven beyond a reasonable doubt that Conner had previously served separate terms of one year or more *164 in a state or federal penitentiary. Thus, this argument was preserved for appeal.
¶ 18. The circuit court’s imposed sentence “generally will not be disturbed if found to be within the allowable statutory range.” Yeatman v. State, 90 So.3d 1239, 1245 (¶ 18) (Miss.2012). “As long as the trial judge applied the correct legal standards, this Court will not reverse a trial judge’s decision unless it is manifestly in error, or is contrary to the overwhelming weight of the evidence.” Frazier v. State, 907 So.2d 985, 990 (¶ 8) (Miss.Ct.App. 2005). The State had the burden of proving that Conner was a habitual offender beyond a reasonable doubt. See id. at 992 (¶ 20). This Court previously addressed this issue in Vince v. State, 844 So.2d 510 (Miss.Ct.App.2003). Vince complained the State did not produce sufficient evidence to support sentencing him as a habitual offender. Id. at 516 (¶ 17). At trial, the State relied on a National Crime Information Center printout of Vince’s past convictions. Id. at 517 (¶ 23). However, the NCIC printout was not an exhibit. Id. at (¶ 22). It also was not listed as an exhibit in the transcript. Id. This Court vacated Vinee’s sentence because the State failed to put forth evidence that proved Vince’s prior convictions beyond a reasonable doubt. Id.
¶ 19. This Court distinguished Vince in Frazier. Frazier also argued the State did not sufficiently prove his prior convictions. Frazier, 907 So.2d at 992 (¶ 22). The State admitted pen-pack records into evidence to prove the prior convictions. Id. This Court distinguished Frazier’s circumstances from Vince and noted the State had offered certified copies of pen packs instead of NCIC reports. Id. at 993 (¶ 23). Also, the circuit court actually admitted the pen packs into evidence. Id. at 992 (¶ 22). The appellate record also contained the pen packs. Id. at (¶ 18). Although the Vince Court had reversed based on the insufficient record, the Frazier Court concluded Frazier’s argument was without merit because in his case the record was sufficient. See id. at 993 (¶ 23).
¶ 20. The evidence presented against Conner is more like Frazier than Vince. As in Frazier, the State relied on certified copies of conviction, with the pen pack included, and a sworn affidavit from the director of sentence-management services. The pen pack was admitted into evidence during the circuit court’s hearing to amend the indictment. At the sentencing hearing, the State asked the court to refer back to the record that the indictment had been amended to charge his status as a section 99-19-83 habitual offender and asked that he receive the maximum sentence. The defense objected to incorporating by reference into the sentencing-hearing transcript the convictions previously submitted in the motion-to-amend hearing. Specifically, the defense argued the pen pack and prior convictions were hearsay and violated Con-nells right to confront the witnesses. The circuit court overruled Conner’s objection. Thus, the circuit court incorporated the pen pack into the record by reference during the sentencing hearing.
¶ 21. This Court reversed in Vince because the record was insufficient. Id. Here, the court properly admitted the pen pack into evidence. In Dixon v. State, 812 So.2d 225, 231 (¶ 26) (Miss.Ct.App.2001), this Court noted documents in pen packs are “competent evidence of prior crimes to enhance sentencing.” Also, the affidavit of Candace Whisman, director of sentence management services for the Tennessee Department of Corrections says:
Mr. Conner was sentenced December 17, 1984, in Shelby County Case # 8404276 ct. 1 and ct. 2, and received a sentence of five years for Robbery in each case. Both sentences were served *165 concurrently. He was awarded pre-trial jail credit in both cases for a total of 160 days. He served time in custody on these cases for 1,170 days from December 17, 1984, until these sentences expired effective March 1, 1988. Total time served on these cases equaled 1,330 days.
Mr. Conner was also sentenced December 17, 1984, in Shelby County Case # 8404274 and 8404275, and received a sentence of twenty-five years for Robbery Armed with a Deadly Weapon in each ease. Both sentences were served concurrently ... with Case # 8404276. He was awarded pre-trial jail credit in both cases for a total of 160 days. He served time in custody on these cases for 1,848 days from December 17, 1984, until parole was granted and he was released on January 8, 1990[,] to parole supervision. He served time in custody for another 355 days as he was returned from parole on a violation as of March 4, 1992, parole was revoked on March 18, 1992, and he was released again to parole supervision on February 22, 1993. He served time in custody for another 896 days as he was returned from parole on a violation as of July 21, 1994, parole was revoked on August 30, 1994, and he was released again to parole supervision on January 2, 1997. He served time in custody for another 1,598 days as he was returned from parole on a violation as of March 8, 1998, parole was revoked on March 30, 1998, and he was released at expiration of sentence on July 23, 2002. Total time served on these cases equaled 4,857 days.
Mr. Conner was sentenced April 18, 1995, in Shelby County Case # 9407078, and received a sentence of six years for Robbery. This sentence was ordered to be served consecutively to his prior sentences. He was awarded pre-trial jail credit in this case for a total of 251 days.
This offense was committed while on parole[,] so the TN Board of Probation and Parole ordered the sentence to begin effective July 13, 1995. He served time in custody on these cases for 539 days from July 13,1995, until parole was granted and he was released to parole supervision on January 2, 1997. He served time in custody for another 284 days as he was returned from parole on a -violation as of March 8, 1998, parole was revoked on March 30, 1998, and this sentence expired effective December 17, 1998. He remained in custody on his prior sentence. Total time served on this case equaled 1,074 days.
Mr. Conner was sentenced January 9, 2006, in Shelby County Case # 0404050, and received a sentence of two years for Attempted Aggravated Burglary. He was awarded pre-trial jail credit for a total of 209 days. He served time in custody on these cases for 72 days from January 9, 2006[,] until he was released to determinate probation on March 22, 2006. He remained out of custody until probation expired effective August 21, 2007. Total time served in custody on this case equaled 281 days.
The requirements of Mississippi Code Annotated section 99-19-83 must be met for Conner to have been sentenced as a habitual offender. That section reads:
Every person convicted in this state of a felony who shall have been convicted twice previously of any felony or federal crime upon charges separately brought and arising out of separate incidents at different times and who shall have been sentenced to and served separate terms of one (1) year or more in any state and/or federal penal institution, whether in this state or elsewhere, and where any one (1) of such felonies shall have been a crime of violence shall be sentenced to life imprisonment, and such *166 sentence shall not be reduced or suspended nor shall such person be eligible for parole or probation.
Miss.Code Ann. § 99-19-83.
¶ 22. The pen pack indicates that Conner was convicted of robbery in 1995 and pled guilty to armed robbery with a deadly weapon in 1984. Both are felony offenses. The events had separate victims and occurred at separate times. This court has established “[separate convictions based upon different crimes, even if the crimes of which a defendant is convicted occurred on the same day, may serve as prior offenses to be considered in sentencing a defendant as a habitual offender.” Shumaker v. State, 956 So.2d 1078, 1088 (¶ 27) (Miss.Ct.App.2007) (citation omitted). Thus, the convictions arose out of separate incidents.
¶23. Conner was sentenced to serve a term over a year for each conviction. “[P]roof of habitual status is sufficient where the State demonstrates that a defendant was sentenced to terms in excess of one year.” Frazier, 907 So.2d at 991 (¶ 15). It does not matter that the terms were served consecutively because “[t]he statute does not require that the terms served must have an intervening period between them when the defendant is free of confinement.” Jackson v. State, 483 So.2d 1353, 1357 (Miss.1986).
¶24. Tennessee Code Annotated 39-13-401 (1990) defines robbery as “the intentional or knowing theft of property from the person of another by violence or putting the person in fear.” Thus, robbery is a violent crime. For these reasons, section 99-19-83’s requirements are met.
¶ 25. Thus, the evidence sufficiently proved Conner’s status as a habitual offender. We find that this issue is without merit.

3. The circuit court did not err when it did not give a jury instruction on the elements of larceny.

¶ 26. Conner argues that the circuit court erred when it did not instruct the jury as to the elements of larceny. We must note that Conner did not offer an instruction that set forth the elements of larceny. Also, the only objections he made during jury-instruction proceedings were that the State had not provided evidence of intent to commit larceny; no proof had been presented of any larceny; the elements of burglary had not been met; and the offense committed as a trespass or attempted burglary. He moved to dismiss the count of burglary. He also requested a lesser-included-offense instruction. It has been established that when a party fails to object or offer an instruction, he waives the issue for appeal. Ballenger v. State, 667 So.2d 1242, 1252 (Miss.1995) (citation omitted). Furthermore, “error cannot be predicated on failure of the court to give an instruction that was not requested.” Ellis v. State, 956 So.2d 1008, 1014 (¶ 11) (Miss.Ct.App.2007) (citation omitted). Thus, in order to address this issue, we must find plain error.
¶ 27. The plain-error doctrine requires the appellant to show that there was an error in the trial court that resulted in a “manifest miscarriage of justice.” Blunt v. State, 55 So.3d 207, 211 (¶ 16) (Miss.Ct.App.2011) (internal quotation omitted). The plain-error doctrine only applies when the error complained of affects a defendant’s fundamental right. Id.
¶ 28. A circuit court’s failure to instruct the jury on all the elements of a crime is error. Kolberg v. State, 829 So.2d 29, 47 (¶ 28) (Miss.2002) (citing Hunter v. State, 684 So.2d 625, 635 (Miss.1996)). The circuit court only commits “fundamental error” if it fails to instruct the jury on an essential element of the offense. Lyles *167 v. State, 12 So.3d 532, 541-42 (¶28) (Miss. Ct.App.2009) (citations omitted).
¶ 29. Burglary of a dwelling has two essential elements: (1) breaking and entering of the dwelling house of another and (2) intent to commit some crime therein. Miss.Code Ann. § 97-17-23(1) (Supp.2012). The Mississippi Supreme Court has said “the crime of burglary does not contain two separate and distinct ‘sub-crimes.’ ” Booker v. State, 716 So.2d 1064, 1067-68 (¶ 12) (Miss.1998). Conner argues that because an indictment for burglary that fails to specify what crime the accused intended to commit is fatally defective, the specific underlying offense is an element of the crime of burglary. See Lambert v. State, 462 So.2d 308, 311 (Miss.1984). However, while the supreme court has discussed the importance of specifying in the indictment the crime the accused intended to commit, the court has also stated that the State is not required to prove the elements of the crime intended in every particular. Newburn v. State, 205 So.2d 260, 266 (Miss.1967). Conner’s indictment charged him with the intent to commit larceny. The State was not required to prove the elements of larceny.
¶30. Consequently, larceny is not an element of burglary. Because larceny is not an essential element, the circuit court did not commit fundamental error when it did not give an instruction on larceny.
A The circuit court did not err when it denied Conner’s motion for a new trial.
¶ 31. Conner argues that he was entitled to a new trial because the conviction for burglary was “wholly based upon eyewitness testimony.” In his brief, Conner makes an interesting argument:
The United States Supreme Court recently concluded that eyewitness identification does not require an additional level of review in order to comport with the Due Process Clause of the United States Constitution[ ] when the identification was not procured under suggestive circumstances. Perry v. New Hampshire, ... — U.S. —, —, 132 S.Ct. 716, 730, 181 L.Ed.2d 694 (2012)[.] However, the Court’s opinion in Perry is indicative of a renewed debate áboüt the trustworthiness and reliability of eyewitness accounts as well as concerns that mistaken eyewitness identifications can lead to wrongful convictions. Justice Sotomayor’s dissent in Perry is particularly illustrative of the empirical evidence surrounding eyewitness testimony:
The empirical evidence demonstrates that eyewitness misidentification is “the single greatest cause of wrongful convictions in this country.” Researchers have found that a staggering 76% of the first 250 convictions overturned due to DNA evidence since 1989 involved eyewitness mis-identification. Study after study demonstrates that eyewitness recollections are highly susceptible to distortion by postevent information or social cues; that jurors routinely overestimate the accuracy of eyewitness identifications; that jurors place the greatest weight on eyewitness confidence in assessing identifications even though confidence is a poor gauge of accuracy; and that suggestiveness can stem from sources beyond police-orchestrated procedures.
Perry, 132 S.Ct. at 738 — 39[ ] (Sotomayor, J., dissenting) (internal citations omitted).
¶ 32. Conner admits that Campbell identified him as the man inside her home. However, he claims that he “was never found with Campbell’s property. The only evidentiary link between Conner and the *168 purported burglary is Campbell’s identification. This evidentiary link, given the discussion above, is tenuous, at best.” Campbell argues that he is entitled to a new trial on the burglary conviction.
¶ 33. This Court reviews a denial of a motion for a new trial for abuse of discretion. Rutland v. State, 60 So.3d 137, 142 (¶ 18) (Miss.2011). As to the circuit court’s denial of Conner’s motion for a new trial, which alleged that the verdict was against the overwhelming weight of the evidence, this Court “will only disturb [the] verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice.” Bush, 895 So.2d at 844 (¶ 18). This Court must consider the evidence in the light most favorable to the verdict. Id. (citation omitted).
¶ 34. Campbell testified that Conner was in her home. In Mississippi, eyewitness testimony is sufficient evidence to uphold a conviction. See Butler v. State, 102 So.3d 260, 268 (¶ 24) (Miss.2012) (eyewitness identification was sufficient to support jury’s verdict for conviction of manslaughter); Green v. State, 89 So.3d 543, 554 (¶ 30) (Miss.2012) (eyewitness identification was sufficient to support jury’s verdict for conviction of sexual battery and lustful touching of a child).
¶ 35. Campbell’s eyewitness testimony was sufficient evidence to identify Conner as the person who was in her home and who was guilty of of burglary of a dwelling. Thus, we do not find that the verdict was against the overwhelming weight of the evidence. We find no merit to this issue and affirm.
¶ 36. THE JUDGMENT OF THE DE-SOTO COUNTY CIRCUIT COURT OF CONVICTION OF COUNT I, BURGLARY OF A DWELLING, AND SENTENCE OF LIFE IMPRISONMENT; COUNT III, FELONY FLEEING, AND SENTENCE OF LIFE IMPRISONMENT, WITH THE SENTENCES TO RUN CONSECUTIVELY TO EACH OTHER AND TO ANY AND ALL SENTENCES PREVIOUSLY IMPOSED, ALL AS A HABITUAL OFFENDER WITHOUT ELIGIBILITY FOR PAROLE OR PROBATION, AND ALL IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO DESOTO COUNTY.
LEE, C.J., IRVING, P.J., ISHEE, ROBERTS, CARLTON, MAXWELL, FAIR AND JAMES, JJ., CONCUR. BARNES, J., CONCURS IN PART AND IN THE RESULT.

. The State’s brief is minimalist or bare-bones. For example, the State’s brief includes a statement of the case that is simply a block quote of the "Trial Transcript of State's Opening Statement." Mississippi Rules of Appellate Procedure 28(b) and 28(a)(4) do not require the appellee provide a statement of the case. However, if the appellee chooses to provide a statement of the case, it must include "appropriate references to the record.” A block quote of the opening argument is not an "appropriate reference!] to the record.”