**IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI**

**NO. 2013-KA-02091-COA**

JEREMY EDWARDS                                                         APPELLANT

v.

STATE OF MISSISSIPPI                                                    APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 12/09/2013 |
| TRIAL JUDGE: | HON. RICHARD A. SMITH |
| COURT FROM WHICH APPEALED: | WASHINGTON COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: W. DANIEL HINCHCLIFF GEORGE T. HOLMES |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: STEPHANIE BRELAND WOOD |
| DISTRICT ATTORNEY: | WILLIE DEWAYNE RICHARDSON |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| TRIAL COURT DISPOSITION: | CONVICTED OF SHOOTING A FIREARM INTO AN OCCUPIED BUILDING AND SENTENCED TO FIVE YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITH ONE YEAR TO SERVE AND FOUR YEARS OF POST-RELEASE SUPERVISION, AND TO PAY $500 TO THE CRIME VICTIMS' COMPENSATION FUND |
| DISPOSITION: | AFFIRMED: 11/25/2014 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE GRIFFIS, P.J., BARNES AND ISHEE, JJ.**

**GRIFFIS, P.J., FOR THE COURT:**

¶1.     Jeremy Edwards was convicted of willfully and feloniously shooting into an occupied building in violation of Mississippi Code Annotated section 97-37-29 (Rev. 2014). The trial court sentenced Edwards to five years, with four years suspended, in the custody of the

Mississippi Department of Corrections. Edwards appeals the trial court's denial of his motion for a directed verdict and argues that the evidence at trial was insufficient to sustain a guilty verdict. We find no error and affirm.

FACTS AND PROCEDURAL HISTORY

¶2. On August 11, 2012, Jimmy Whatley, the owner of K&J Grocery and Grill in Greenville, Mississippi, saw a group of approximately ten men gathered outside of his place of business. Concerned that the presence of the large group would deter customers, he asked the group to leave. All of the men, except for Edwards, dispersed for the night.

¶3. Whatley reported Edwards came into the store, purchased a cigar, and began cursing and yelling. Edwards shouted at Whatley, asking whether he was talking to Edwards specifically when Whatley asked the men to leave. Whatley replied he aimed his request at all of the men, not just Edwards. Whatley then escorted Edwards out of the establishment.

¶4. Later in the evening, Whatley went outside of the store just prior to closing. Whatley stated he saw Edwards across the street holding something black in his hands. Moments later, after Whatley went back inside the store, several gunshots rang out. At least one projectile hit the front door of the store, and another possibly struck a vehicle belonging to Whatley.

¶5. When the police investigated the shooting, Whatley, the only witness, stated he did not see the perpetrator, but told police he believed Edwards was responsible for the shooting. When presented with a lineup, Whatley identified Edwards as the person outside of his store immediately before the shooting. Police, however, did not recover any evidence from the

2

scene other than Whatley's statement and a few photographs of the storefront.

¶6.    The day after the shooting, Whatley went to the police station and showed officers a hole in the rear driver's side door of his vehicle.  Whatley claimed he parked the vehicle outside of the store the previous night and it remained near the store during the shooting.  Police recovered a projectile from the vehicle's door, but did not trace it to a gun or to a person.

¶7.    At trial, the police officers testified that no physical evidence tied Edwards to the shooting and Whatley served as the only witness to the event.  Edwards moved for a directed verdict after the close of the State's case-in-chief and argued that the insufficiency of the evidence warranted a directed verdict.

¶8.    The trial court denied the motion, and the jury unanimously found Edwards guilty.  Edwards filed his motion for a new trial or, in the alternative, a judgment notwithstanding the verdict (JNOV), on the basis of a lack of evidence shortly after trial.  The trial court denied Edwards's motion and Edwards now appeals.

STANDARD OF REVIEW

¶9.    "'When reviewing the sufficiency of the evidence, this Court must ask whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Miles v. State*, 956 So. 2d 349, 350 (¶6) (Miss. Ct. App. 2007) (citation omitted).

¶10.    Additionally, if keeping "'in mind the beyond a reasonable doubt burden of proof standard, reasonable fair-minded [jurors] in the exercise of impartial judgment might reach

3

different conclusions on every element of the offense,' the evidence will be deemed to have been sufficient." *Conner v. State,* 138 So. 3d 158, 162 (¶9) (Miss. Ct. App. 2013) (quoting *Bush v. State*, 895 So. 2d 836, 843 (¶16) (Miss. 2005)).

ANALYSIS

¶11.    Edwards argues on appeal that the trial court erred in not granting his motion for a directed verdict at the close of the State's case-in-chief due to the insufficiency of the evidence presented. Edwards's contention is that there was insufficient evidence to sustain the jury's verdict of guilty.

¶12.    "'[M]otion[s] for [a JNOV], peremptory instruction, and directed verdict all challenge the legal sufficiency of the evidence.'" *Miles*, 956 So. 2d at 350 (¶6) (quoting *Shumpert v. State*, 935 So. 2d 962, 966 (¶8) (Miss. 2006)). To determine the sufficiency of evidence, the central issue is "whether the evidence shows 'beyond a reasonable doubt that the accused committed the act charged, and that he did so under such circumstances that every element of the offense existed; and where the evidence fails to meet this test it is insufficient to support a conviction.'" *Conner,* 138 So. 3d at 162 (¶8) (quoting *Bush*, 895 So. 2d at 843 (¶16)).

¶13.    Edwards was charged under Mississippi Code Annotated section 97-37-29, which states:

> If any person shall willfully and unlawfully shoot or discharge any pistol, shotgun, rifle or firearm of any nature or description into any dwelling house or any other building usually occupied by persons, whether actually occupied or not, he shall be guilty of a felony whether or not anybody be injured thereby and, on conviction thereof, shall be punished by imprisonment in the state

4

penitentiary for a term not to exceed ten (10) years, or by imprisonment in the county jail for not more than one (1) year, or by fine of not more than five thousand dollars ($5,000.00), or by both such imprisonment and fine, within the discretion of the court.

Therefore, the evidence must show beyond a reasonable doubt that Edwards willfully and unlawfully shot or discharged a firearm into a building normally occupied by persons.

¶14.    The evidence here established definitively that a projectile went through the door of the store. Additional evidence suggested that another projectile went into the rear driver's side door of a vehicle. However, police officers did not retrieve the projectile from the vehicle until the day after the shooting. This prevented a conclusive connection between the two projectiles.

¶15.    Viewing the evidence in the light most favorable to the prosecution, the elements provided enough support such that a reasonable trier of fact could determine that a person unlawfully and willfully shot a firearm into an occupied building. The damage to the store and Whatley's testimony provided enough evidence for jurors to conclude that a shooting into a dwelling occurred.

¶16.    The question remains, however, whether a reasonable juror could have determined beyond a reasonable doubt that Edwards committed the crime. While the evidence corroborates the shooting, no physical evidence directly ties Edwards to the shooting. The police failed to link a gun either to Edwards or to the projectile retrieved from the vehicle.

¶17.    This Court previously held "the absence of physical evidence does not negate a conviction where there is testimonial evidence." *Williams v. State*, 879 So. 2d 1126, 1128

(¶5) (Miss. Ct. App. 2004) (quoting *Graham v. State*, 812 So. 2d 1150, 1153 (¶9) (Miss. Ct. App. 2002)). Testimony proved Edwards stood outside of the store immediately prior to the shooting. Whatley testified Edwards held something black in his hand and appeared alone. Whatley did not see who committed the act, but no other person was in the vicinity at the time of the shooting.

¶18. Evaluating this evidence under the standard for sufficiency, this Court "must find that reasonable and fair-minded jurors exercising sound judgment could have logically concluded [the defendant] was guilty." *Travis v. State*, 972 So. 2d 674, 678 (¶14) (Miss. Ct. App. 2007). *Travis* is somewhat instructive on this issue.

¶19. In *Travis*, two cars collided in a rural area in Madison County. *Id.* at 676 (¶2). At the scene, police and emergency personnel saw the decedent lying in the roadway and Travis standing next to the road. *Id.* at 677 (¶3). Travis appeared confused and unsure of how he ended up at the intersection. *Id.* at 677-78 (¶¶3, 4).

¶20. Police officers took Travis into custody and performed a breath intoxylizer test, which showed Travis's blood-alcohol level at .14, almost twice the legal limit. *Id.* at 677 (¶5). This Court affirmed Travis's conviction of DUI homicide even though the State could not conclusively prove Travis drove either of the cars involved in the accident. *Id.* at 680-81 (¶26).

¶21. This Court upheld Travis's conviction, stating that the jury could have reasonably concluded Travis drove the other car, even though no one witnessed Travis actually perform the act. *Id.* Courts have upheld other instances where no person witnessed the accused

6

actually commit the crime. *May v. State*, 569 So. 2d 1188, 1189 (Miss. 1990) (defendant convicted of shooting into a dwelling when no witness actually saw him shoot into a building, but later saw him with a gun); *Conner*, 138 So. 3d at 162 (¶11) (defendant convicted of felony flight even though no witness positively identified him leaving the vehicle); *Miles*, 956 So. 2d at 351 (¶8) (defendant convicted of shooting into a dwelling when no one saw him point a gun and fire at a building).

¶22. "Our system of justice allows the jury to make logical and reasonable inferences and presumptions." *Travis*, 972 So. 2d at 680 (¶26) (quoting *Broomfield v. State*, 878 So. 2d 207, 215 (¶31) (Miss. Ct. App. 2004)). The jury instructions permitted jurors to draw reasonable inferences in light of their own individual experiences. From these reasonable inferences, even if jurors could have come to different conclusions on each element of the crime, the evidence remains sufficient.

¶23. Viewing the evidence in the light most favorable to the prosecution and giving it the benefit of all reasonable inferences, the jury could have found beyond a reasonable doubt that Edwards perpetrated the act charged. Thus, we do not find the evidence insufficient to support a guilty verdict. We find no merit to this issue and affirm.

¶24. **THE JUDGEMENT OF THE WASHINGTON COUNTY CIRCUIT COURT OF CONVICTION OF SHOOTING A FIREARM INTO AN OCCUPIED BUILDING AND SENTENCE OF FIVE YEARS, WITH ONE YEAR TO SERVE AND FOUR YEARS OF POST-RELEASE SUPERVISION IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AND TO PAY $500 TO THE CRIME VICTIMS' COMPENSATION FUND, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO WASHINGTON COUNTY.**

**LEE, C.J., BARNES, ISHEE, ROBERTS, CARLTON, MAXWELL, FAIR AND**

**JAMES, JJ., CONCUR.  IRVING, P.J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION.**